# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERT MICHAEL KEENAN, DOUGLAS WYNN KEENAN, and MITCHELL WARREN SEFFENS, | Case No. 19-CV-3135 (NEB/ECW) |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANTS' MOTIONS TO DISMISS |
| BOEING AIRCRAFT CORPORATION, MCDONNELL-DOUGLAS AIRCRAFT CORPORATION d/b/a BOEING AIRCRAFT CORPORATION, HUGHES HELICOPTERS CORPORATION d/b/a MCDONNELL DOUGLAS AIRCRAFT d/b/a BOEING AIRCRAFT CORPORATION, LOCKHEED MARTIN CORPORATION, NORTHRUP GRUMAN CORPORATION, RAYTHEON COMPANY, and RAYTHEON TECHNOLOGIES CORPORATION, | |
| Defendants. | |

*Pro se* Plaintiffs Robert Keenan, Douglas Keenan, and Mitchell Seffens brought this action alleging that Defendants are strictly liable for injuring Plaintiffs "as a result of contracting with a manufacturing company that illegally dumped extremely toxic and hazardous wastes." (ECF No. 1 ("Compl.") ¶ 23.) Defendants Lockheed Martin

Corporation, The Boeing Company,[1] Raytheon Company, and United Technologies Corporation[2] filed a joint motion to dismiss, and Defendant Northrup Grumman Corporation[3] joined that motion. (ECF Nos. 29, 54.) In response, Plaintiff Robert Keenan ("Keenan") filed a letter requesting appointment of counsel and addressing the merits of the motions to dismiss. (ECF No. 60.) Plaintiffs Douglas Keenan and Mitchell Seffens did not respond to the motions.[4] Defendants filed a joint reply brief. (ECF No. 61.) For the reasons below, the Court grants Defendants' motions to dismiss and denies Keenan's request for appointment of counsel. The Court also denies Keenan's renewed request to disqualify Dorsey & Whitney LLP as counsel for Lockheed Martin. (ECF No. 40; ECF No. 60 at 3.)

---

[1] The Complaint incorrectly identifies The Boeing Company as Boeing Aircraft Corporation. (ECF No. 21 (Rule 7.1 Corporate Disclosure Statement for The Boeing Company).) In addition, although the Complaint names as defendants McDonnell-Douglas Aircraft Corporation d/b/a Boeing Aircraft Corporation and Hughes Helicopters Corporation d/b/a Boeing Aircraft Corporation, neither is an existing corporate entity. (*Id.*; ECF No. 61 at 1 n.1.)

[2] Raytheon Technologies Corporation was substituted for United Technologies Corporation in May 2020. (ECF No. 52.)

[3] The Complaint incorrectly identifies Northrup Grumman Corporation as Northrup Gruman Corporation. (ECF No. 58 (Rule 7.1 Corporate Disclosure Statement for Northrup Grumman Corp.); ECF No. 61 at 1 n.1.)

[4] Keenan informed the Court that his brother Douglas Keenan died in February 2020. (ECF No. 40; *see also* ECF No. 32 ("Hontos Decl."), Ex. 5 (Minnesota death record for Douglas Keenan).)

## BACKGROUND

The Court draws the following background from the Complaint, accepting its factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). In doing so, the Court disregards any conclusory allegations or legal conclusions. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

For 35, years, Keenan has resided at—or in the neighborhood of—8200 Harriet Avenue South, Bloomington, Minnesota ("Plaintiffs' Property"). (Compl. ¶¶ 4, 15.) Douglas Keenan resided at Plaintiffs' Property from 1954 until 2017. (*Id.* ¶ 5.) Seffens resided at Plaintiffs' Property or nearby neighborhoods in Bloomington, Minnesota, from 2010 until January 2017. (*Id.* ¶ 6.) Over the past several years, all three Plaintiffs have been diagnosed with medical disorders that their treating physicians attribute to ingestion, inhalation, or transdermal absorption of toxic environmental groundwater, soil, soil vapor or ambient air containing toxic and hazardous waste allegedly caused by Defendants. (*Id.* ¶¶ 4–6.)

Over the years, each of the Defendants contracted with Consolidated Precision Products, Inc., formerly known as Hitchcock Industries ("Hitchcock") to provide manufacturing services. (*Id.* ¶¶ 7–13.) Hitchcock's manufacturing facility is located at 8701 Harriet Avenue South, Bloomington, Minnesota. (*Id.*) The Complaint alleges that Hitchcock "was caused through [these] contracted manufacturing services to dump vast

amounts of liquid toxic hazardous chemical wastes into a chemical drainage pit situated between 87th and 89th streets to the North and South, respectively, and Harriet Avenue South and Lyndale Avenue South to the East and West, respectively." (*Id.*) Hitchcock is "the company mainly responsible for the dumping of the liquid toxic hazardous chemicals into the groundwater."[5] (*Id.* ¶ 14.) The liquid toxic hazardous chemicals made their way into the groundwater, and the contaminated groundwater allegedly "made its way into the bodies of all the nearby residents living in the area through direct ingestion, inhalation and transdermal absorption directly causing a series of health injuries to the inhabitants of [Plaintiffs' Property]." (*Id.* ¶¶ 7–13.) A large area surrounding Hitchcock's manufacturing facility, including Plaintiffs' Property, was added to the Minnesota Superfund Clean-up Site List. (*Id.*)

Between July and December 2015, the Minnesota Pollution Control Agency ("MPCA") and the Minnesota Department of Health informed Plaintiffs that they resided in an area of extensive environmental groundwater, soil, soil vapor, or ambient air contamination. (*Id.* ¶ 17.) An MPCA project hydrogeologist explained that hazardous and toxic volatile organic compounds at levels of concern were identified through soil vapor testing in the vicinity of the area surrounding Plaintiffs' Property. (*Id.*)

---

[5] In 2016, Plaintiffs filed a lawsuit in Minnesota state court against Hitchcock and other defendants stemming from the same alleged release of hazardous waste into the environment. (Hontos Decl., Ex. 1 (*Keenan v. Toro Mfg. Co.*, No. 27-cv-16-1394 (Minn. Dist. Ct. Hennepin Cty).)

The MPCA conducted sub-slab soil vapor testing of Plaintiffs' Property on September 1, 2015. (*Id.* ¶ 18.) A resulting analytical report showed the soil, soil vapor and/or contaminated groundwater contained a list of twenty-five different toxic volatile organic compounds, many of which are known or suspected to be human carcinogens. (*Id.* ¶ 19.) The results demonstrate an extensively-contaminated groundwater plume, and that soil, or soil gas vapors from this plume, were contaminating the homes in the surrounding areas. (*Id.*) Keenan determined that many of the volatile organic compounds found in the sub-slab soil vapor analysis are toxic and hazardous volatile organic chemicals and known human carcinogens that can cause cancer, cardiac problems, and other very serious health problems. (*Id.* ¶ 20.) The Landmark Environmental Company informed Plaintiffs that there was "no safe level of exposure to any of the extremely toxic and hazardous chemicals listed in the soil vapor tests." (*Id.* ¶ 21.) The MPCA conducted follow-up sub-slab soil vapor testing at Plaintiffs' Property in December 2015. (*Id.* ¶ 22.) A second analytical report reflected thirty volatile organic compounds found in the soil vapor. (*Id.*)

Plaintiffs filed the Complaint in federal court based on diversity jurisdiction in December 2019, alleging that "[u]nder the legal theory of Strict Liability, the Defendants are liable as a result of contracting with a manufacturing company that illegally dumped extremely toxic and hazardous wastes that made its way into the groundwater therein contaminating Plaintiffs' property." (Compl. ¶¶ 2, 23.) Plaintiffs are no more specific

5

about their cause(s) of action than alleging the "legal theory of Strict Liability." (*Id*. ¶ 23.) They seek compensation for: the price of the house and furniture they lost as a result of disabilities that prevented them from maintaining employment; past and future injuries to their health; lost wages and medical bills; and "other" and "miscellaneous damages resulting in a total monetary award" of greater than $50 million. (*Id.*)

## ANALYSIS

### I.      Claims of Douglas Keenan

Because Article III of the Constitution limits federal jurisdiction to cases or controversies, "if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). Plaintiffs do not plead under any particular statute or common law theory. But because the Complaint is based on diversity jurisdiction, the Court assumes that Plaintiffs' assertion of "the legal theory of Strict Liability" is made under Minnesota state law.

Under Minnesota state law, Keenan and Seffens do not have standing to bring claims on behalf of Douglas Keenan. Minnesota Statutes Section 573.01 provides that "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02." Minn. Stat. § 573.01. Under that statute, "[w]hen death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided [by statute] may maintain an action

therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." Minn. Stat. § 573.02, subd. 1. "Read together, these two provisions demonstrate that, upon death, the right to maintain existing actions based on personal injury to the decedent, as well as the right to institute new actions based on personal injury, belong to the wrongful death trustee." *Steinlage ex rel. Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 915 (8th Cir. 2006); *see Ortiz v. Gavenda*, 590 N.W.2d 119, 121 (Minn. 1999) ("A wrongful death claim is purely statutory, as common law recognized no such actions on the theory that a claim for personal injuries died with the victim.").

Douglas Keenan died in February 2020. (ECF No. 32-5.) In July, the Court granted Keenan a continuance in part to afford him the opportunity to be made "personal representative" of his brother's estate. (ECF Nos. 40 (requesting a continuance for Keenan to be appointed personal representative, maintaining that Douglas Keenan's claim should be asserted as a wrongful death claim), 46 (granting continuance).) As of the date of this order, Keenan has not informed the Court that he has been appointed to pursue claims on Douglas Keenan's behalf, and nothing in the record indicates that anyone has been appointed trustee under Minnesota Statutes section 573.02. Without an appointed trustee, Plaintiffs do not have standing to bring claims on behalf of Douglas Keenan, and the claims must be dismissed. *E.g., Sheeley v. City of Austin*, No. 12-CV-2525 (ADM/SER), 2015 WL 506293, at *4 (D. Minn. Feb. 6, 2015) ("Scott's personal injury action against Gold

Cross died with him, leaving Plaintiffs no cause of action to pursue against Gold Cross as the personal representatives of Scott's estate."). Therefore, Douglas Keenan's claims must be dismissed.

## II.      Rule 12(b)(6) Motion to Dismiss

Defendants move for dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires that the Court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The court is to construe a *pro se* complaint liberally, but the complaint "must

allege sufficient facts to support the claims advanced." *Stringer v. St. James R–1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quotation omitted).

Courts primarily consider the allegations in a complaint in determining whether to grant a Rule 12(b)(6) motion. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted). Courts may additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting the motion into one for summary judgment. *Id.* (citation and quotation omitted). Matters of public records include some court documents, and the Court may consider those documents under Rule 12(b)(6). *Hester v. Redwood Cnty.*, 885 F. Supp. 2d 934, 942 (D. Minn. 2012) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). Defendants submit court documents related to Plaintiffs' prior litigation in Minnesota state court, and Plaintiffs do not question their authenticity. (ECF No. 32, Exs. 1–4.) The Court will consider them without converting the motion to dismiss to a motion for summary judgment. *E.g., Kivel v. ABN AMRO Mortg. Grp., Inc.*, No. 05-CV-2926 (ADM/JSM), 2006 WL 1579819, at *3 (D. Minn. June 1, 2006) (taking judicial notice of the pleadings, documents, briefs, evidentiary submissions, and decisions from other related litigation).

### A. Notice Pleading

Defendants argue that the Complaint fails to satisfy the notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) provides that pleadings must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "*pro se* litigants are held to a lesser pleading standard than other parties," and their complaints "must be liberally construed." *Topchian*, 760 F.3d at 849 (citations omitted). "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* (quotation omitted).

The Complaint and the civil cover sheet provide Defendants with notice of strict liability claims based on Plaintiffs' alleged exposure to hazardous substances released into the environment. (Compl. ¶ 23; ECF No. 1-2.) Because the action is based on diversity jurisdiction, Defendants assume—and the Court concurs—that the strict liability claims arise from Minnesota common law and the Minnesota Environmental Response and Liability Act ("MERLA"), Minn. Stat. § 115B.01, *et seq.* Construing the Complaint liberally, the Court can discern the essence of the allegations, and will not dismiss for a failure to meet the standards of Rule 8.

### B. *Common Law Strict Liability Claim*

Under common law, Minnesota has adopted the strict liability rule of *Rylands v. Fletcher*, (1868) LR 3 H.L. 330.[6] *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 738 (8th Cir. 2004) (citing *Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 183 (Minn. 1990)). Courts have summarized the *Rylands* rule as follows:

> [A] party who, for his own profit, keeps on his premises anything not naturally belonging there, the natural tendency of which is to become a nuisance, and to do mischief if it escapes, is liable if it escapes, without proof of negligence, for all damages directly resulting therefrom.

*Id.* at 739 (quoting *Wiltse v. City of Red Wing*, 109 N.W. 114, 115 (Minn. 1906)) (emphasis omitted). Minnesota courts have applied this theory to pollution. *E.g.*, *Berger v. Minneapolis Gaslight Co.*, 62 N.W. 336, 337 (Minn. 1895) (concluding jury instruction that "defendant was liable, without proof of negligence on its part, for the consequences to the plaintiffs resulting from petroleum escaping from its oil tank, if it did so escape, and creating a nuisance upon their premises" was correct).

Thus, Minnesota common law imposes liability for damages to adjacent property owners directly caused by the escape of a substance or harmful force. *Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 860 (Minn. 1984). But under *Mahowald*, the instrumentality that

---

[6] In *Rylands*, the court held that a neighbor who brought something on his own property "which he knows will be mischievous if it gets on his [neighbor's property,] should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 738 (8th Cir. 2004) (quoting *Rylands*, LR 3 H.L. at 340).

caused damage must be in "exclusive control" of the defendant. *Id. at* 860 (declining to extend the doctrine of strict liability for ultrahazardous activities to leaks in gas lines located in public streets). Additionally, Minnesota common law imposes strict liability for harm caused by an "abnormally dangerous activity."[7] *Id.* at 860–61; *Herbst v. N. States Power Co.*, 432 N.W.2d 463, 467 (Minn. Ct. App. 1988). The Complaint alleges neither of these theories sufficiently to avoid dismissal.

First, the Complaint fails to allege facts indicating that Defendants had exclusive control of the instrumentality that caused Plaintiffs' injury, *i.e.*, the hazardous substances that Hitchcock allegedly dumped near Plaintiffs' Property. The Complaint alleges that Hitchcock is "the company mainly responsible for the dumping of the liquid toxic hazardous chemicals into the groundwater." (Compl. ¶ 14; *see id.* ¶¶ 7–14 (alleging

---

[7] In *Mahowald*, the Minnesota Supreme Court did not adopt the Restatement (Second) of Torts Section 520, but it identified factors from Section 520 that a court may consider to determine whether an activity is abnormally dangerous so as to warrant the application of strict liability. 344 N.W.2d at 860–61 & n.2. The Restatement (Second) of Torts Section 520 factors are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id*. at 860 n.2; *see Estrem v. City of Eagan*, No. C8-93-1624, 1993 WL 527888, at *1 (Minn. Ct. App. Dec. 21, 1993) (holding trial court's consideration of § 520 factors to be appropriate because they were recognized in *Mahowald*).

Hitchcock dumped hazardous chemical wastes into the chemical drainage pit).) So under the facts as pled, Defendants necessarily did not have exclusive control of the chemicals at issue. *See Herbst*, 432 N.W.2d at 467 (rejecting strict liability theory based on pipeline explosion where defendant "did not control all activity in and around the pipeline").

Second, the Complaint fails to allege an abnormally dangerous activity giving rise to strict liability. The Complaint lacks any facts from which the Court may reasonably infer that Defendants were engaged in the dumping of chemical waste. It merely alleges that each Defendant entered into contracts with Hitchcock for "very technical and dangerous manufacturing services." (*Id.* ¶¶ 7–13.) The Complaint alleges that these manufacturing contracts "caused" Hitchcock to dump liquid toxic chemical wastes into chemical drainage pit. (*Id.*) These general assertions do not allow the Court to draw the reasonable inference that Defendants were engaged in any abnormally dangerous activity such that they should be held strictly liable under Minnesota common law. *See Twombly*, 550 U.S. at 555 (holding factual allegations "must be enough to raise a right to relief above the speculative level"); *Iqbal*, 556 U.S. at 678 (noting the facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). Because the Complaint fails to plead facts raising Plaintiffs' right to relief above a speculative level, the common law strict liability claim must be dismissed.[8]

---

[8] Defendants also make a statute of limitations argument, which the Court need not reach. (ECF No. 31 at 12.)

### C. *MERLA Claim*

Construed liberally, the Complaint also asserts a strict liability claim under MERLA. The Minnesota legislature enacted MERLA in part to "impose strict liability on those responsible for harm caused by the release of hazardous substances*." Minn. ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 569 (8th Cir. 2012) (quoting *Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 529 (Minn. Ct. App. 1993)). MERLA provides in part that "any person who is responsible for the release of a hazardous substance from a facility is strictly liable for . . . damages which result from the release or to which the release significantly contributes," including "all damages for death, personal injury, or disease." Minn. Stat. § 115B.05, subd. 1. A plaintiff must prove that the defendant is a "person responsible" to prevail on a MERLA claim. *Musicland Grp.*, 508 N.W.2d at 531.

A person is "responsible" under MERLA if the person:

(1) owned or operated the facility:
    (i) when the hazardous substance, or pollutant or contaminant, was placed or came to be located in or on the facility;
    (ii) when the hazardous substance, or pollutant or contaminant, was located in or on the facility but before the release; or
    (iii) during the time of the release or threatened release;

(2) owned or possessed the hazardous substance, or pollutant or contaminant, and arranged, by contract, agreement or otherwise, for the disposal, treatment or transport for disposal or treatment of the hazardous substance, or pollutant or contaminant; or

(3) knew or reasonably should have known that waste the person accepted for transport to a disposal or treatment facility contained a hazardous substance, or pollutant or contaminant, and either selected the facility to which it was transported or disposed of it in a manner contrary to law.

Minn. Stat. § 115B.03, subd. 1. The Complaint alleges that Hitchcock was located at the facility at issue, and alleges no facts from which the Court could infer that Defendants were owners or operators of that facility. *See id.*, subd. 1(1). Thus, the Complaint does not allege any facts from which the Court can reasonably infer that any Defendant owned or possessed the hazardous waste at issue. *See id.*, subd. 1(2). Nor does it allege any facts inferring that any Defendant accepted such waste for transport to Hitchcock's facility, or otherwise took any affirmative steps to arrange for the disposal of the hazardous waste at that facility. *See id.*, subd. 1(3); *e.g.*, *Lancaster v. N. States Power Co.*, No. 11-CV-619 (DWF/FLN), 2011 WL 5444115, at *5 (D. Minn. Nov. 9, 2011) (dismissing MERLA claim where plaintiffs alleged no facts showing that defendant owned the property at issue, took any affirmative steps to intentionally arrange for the disposal at the site, or participated in transporting the hazardous material). Because the Complaint fails to allege facts raising a plausible inference that Defendants are responsible for the release of a hazardous substance from Hitchcock's facility, the MERLA claim is dismissed.

### III.    Keenan's Request for Appointment of Counsel

In his response letter, Keenan requests that the Court appoint counsel to represent him. In determining whether appointment of counsel is appropriate, the court may consider the factual complexity of the issues, the ability of the litigant to investigate the facts, the ability of the litigant to present the claims, and the complexity of the legal arguments. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citation omitted).

The Court finds that neither the facts nor legal issues are overly complex such that appointment of counsel would be warranted. Although Keenan maintains that he is "mentally incompetent due to a brain injury" he received in 2013, (ECF No. 60 at 1), he has demonstrated that he possesses the threshold ability to articulate claims and argue his position. Keenan has filed pleadings seeking relief on his behalf in this proceeding. (*E.g.*, ECF Nos. 1, 40.) In the letter in which he claims an inability to proceed *pro se*, Keenan also provides a coherent opposition to the motions to dismiss. (ECF No. 60 at 1–3.) In view of these facts, the Court declines to appoint counsel to assist Keenan.

## IV.     Keenan's Request to Disqualify Defense Counsel

Finally, Keenan renews his request to remove Dorsey & Whitney LLP as counsel representing defendant Lockheed Martin Corporation. The Court denied this request in April 2020. (ECF No. 46 at 1–3.) Keenan fails to provide any additional evidence supporting this request. For the reasons set forth in the Court's April 2020 order, Keenan's request is denied.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Joint Motion to Dismiss (ECF No. 29) is GRANTED;

2. Defendant Northrup Grumman Corporation's Motion to Dismiss and to Join Other Defendants' Motion to Dismiss (ECF No. 54) is GRANTED;

3.  Plaintiffs' Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE; and

4.  Plaintiff Robert Keenan's request for appointment of counsel and to disqualify

    Dorsey & Whitney LLP (ECF No. 60) is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 25, 2020                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge